**Robert Frederick GARCEAU,**
**Petitioner–Appellant,**

v.

**Jeanne WOODFORD, Acting Warden of San Quentin State Prison,**
**Respondent–Appellee.**

No. 99–99022.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 2001

Filed Dec. 26, 2001

three of his claims. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 2253, and we reverse.

## I. FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Robert Garceau was convicted in Kern County, California, of first degree murder for the September 1984 stabbing deaths of his girlfriend, Maureen Bautista, and her 14–year–old son, Telesforo Bautista. Their bodies were not found until six months later, in a bedroom dresser buried under a layer of concrete in the backyard of one of Garceau's drug partners, Greg Rambo. There was no physical evidence linking Garceau to the murders. The State's case against him consisted largely of the testimony of several persons with whom Garceau manufactured methamphetamine. These drug partners testified that Garceau had confessed to them that he had killed the Bautistas because he was worried that they would reveal his drug activities to law enforcement authorities. They further testified that after Garceau murdered the Bautistas, he returned to the scene of the crime with two of his drug partners and stuffed the Bautistas' bodies into a bedroom dresser. Garceau and Greg Rambo then transported the dresser to Rambo's house. They buried the dresser under a layer of concrete in Rambo's backyard.

A few months later, in February 1985, Greg Rambo was shot to death. Prior to his trial for the Bautista murders, Garceau was charged with and convicted of Greg Rambo's murder and sentenced to 33 years to life imprisonment. At Garceau's trial for the Bautista murders, several of his drug partners testified that he had told them that he had killed Rambo as well. After Rambo's death, his wife, Susan, led

Lynne S. Coffin, State Public Defender for the State of California, San Francisco, California, and Denise Kendall, Mill Valley, California, for the petitioner-appellant.

Clayton S. Tanaka, Deputy Attorney General of California, Sacramento, California, for the respondent-appellee.

Before: O'SCANNLAIN, TASHIMA, and THOMAS, Circuit Judges.

Opinion by Judge TASHIMA; Concurrence by Judge THOMAS; Partial Concurrence and Partial Dissent by Judge O'SCANNLAIN.

TASHIMA, Circuit Judge:

Robert Garceau was convicted of a double homicide in California state court and sentenced to death. The California Supreme Court affirmed his conviction and sentence, *People v. Garceau*, 6 Cal.4th 140, 24 Cal.Rptr.2d 664, 862 P.2d 664 (1993), *cert. denied*, 513 U.S. 848, 115 S.Ct. 144, 130 L.Ed.2d 84 (1994), and denied his state habeas petition on the merits. He then filed a habeas petition in federal district court, raising 28 separate grounds for relief. In due course, he moved the district court for an evidentiary hearing on several of these claims. The district court denied his motion for an evidentiary hearing and later denied his petition. Garceau appeals the district court's denial of an evidentiary hearing on four of his claims, as well as the district court's denial of his petition on

the police to the bodies of the Bautistas buried in her backyard.

Virtually every single one of the prosecution's witnesses had some connection to the murder of the Bautistas or some other self-interested reason for testifying against Garceau. Susan Rambo assisted in digging the hole in her backyard in which the dresser containing the Bautistas was buried for six months. She testified under a grant of immunity. Larry Tom Whittington helped stuff the Bautistas' bodies into the dresser at the crime scene. Patricia Shepard was Whittington's girlfriend; she and Whittington cleaned up the bloodstains at the crime scene the day after the bodies were removed. Harlyn Codd helped Garceau dispose of Rambo's body. The only witness that does not appear to have had a hand in any of the three murders was Wayne James. He was, however, involved in illegal drug manufacturing with Garceau, and he did not come forward to the police until a few days before he testified. Garceau argues that weapons charges against James were dropped after he agreed to testify. Garceau's defense at trial was that one or more of these drug partners killed the Bautistas.

At the sentencing phase, the prosecution presented evidence of Garceau's prior convictions for burglary and weapons charges.

In addition, the jury heard evidence that Garceau possessed high-powered firearms on many other occasions, and that he was involved in a kidnaping. In mitigation, Garceau presented evidence of his history in prison, his upbringing, his character, and his caring relationships with people. The jury fixed the penalty at death.

■ Garceau appealed his conviction and sentence to the California Supreme Court, which affirmed the conviction and sentence. It also denied his state habeas petition on the merits. Garceau requested the appointment of counsel to pursue his federal habeas remedies and a stay of execution in federal district court on May 12, 1995. Counsel was appointed on June 26, 1995, and Garceau filed his federal habeas petition on July 2, 1996.[1]

■ The district court eventually dismissed two of Garceau's 28 habeas claims for failure to exhaust them in state court proceedings. Garceau next filed a motion for an evidentiary hearing on several of his claims, which was denied. Ultimately, the district court denied his habeas petition, as well as the issuance of a certificate of probable cause. Garceau filed a notice of appeal from the final judgment on August 26, 1999, and we issued a certificate of probable cause on January 21, 2000.[2]

1. Although Garceau's petition for the writ of habeas corpus was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214, the AEDPA does not generally apply to his petition. This is the case because the AEDPA does not apply to petitions that were "pending" as of the effective date of the AEDPA, *Calderon v. United States Dist. Court (Kelly),* 163 F.3d 530, 539 (9th Cir.1998) (en banc), *cert. denied,* 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999), and Garceau's petition is considered "pending" as of May 12, 1995, the date he requested both that federal habeas counsel be appointed and that his execution be stayed, *id.* at 540.

2. The provisions of the AEDPA regarding the issuance of a certificate of appealability (COA) as a predicate to review in the court of appeals apply to all cases in which the notice of appeal was filed after the AEDPA's effective date, April 24, 1996. *See Slack v. McDaniel,* 529 U.S. 473, 482, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Garceau filed his notice of appeal after that date. In these circumstances, we treat Garceau's notice of appeal as an application for a COA. *See Whelchel v. Washington,* 232 F.3d 1197, 1202 n. 1 (9th Cir. 2000). Under the AEDPA, a court may issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

## II. DISCUSSION

Garceau contends that the district court erred by: (1) denying his request for an evidentiary hearing on his ineffective assistance of counsel and equal protection claims; (2) dismissing his claim that the State used its peremptory challenges in a racially discriminatory manner; (3) dismissing his claim that the "other crimes" jury instruction violated the Due Process Clause; and (4) dismissing his claim that the trial court's failure to give the jury a "voluntary intoxication" instruction violated the Due Process Clause. Because we conclude that habeas relief is warranted based on the "other crimes" jury instruction, we find it unnecessary to address the remaining issues.

### A. Standard of Review

■ We review de novo the district court's decision to deny a petition for a writ of habeas corpus. *Bribiesca v. Galaza*, 215 F.3d 1015, 1018 (9th Cir.2000).

### B. The "Other Crimes" Jury Instruction

■ During Garceau's trial, the State introduced two types of evidence of other crimes committed by Garceau: evidence that he manufactured illegal drugs and testimonial evidence that, several months after he allegedly murdered the Bautistas, he murdered Greg Rambo (a crime for which he had already been convicted). Although Garceau did not object to this evidence (in fact, he had planned to introduce it himself), he did object to the trial court's

instruction to the jury regarding this evidence, which read as follows:

> Evidence has been introduced for the purpose of showing that the defendant committed other crimes other than that for which he is on trial.
>
> Such evidence, if believed, may be considered by you *for any purpose*, including *but not limited to* any of the following:
>
> *His character or any trait of his character;*
>
> *His conduct on a specific occasion ....*

*Garceau*, 24 Cal.Rptr.2d 664, 862 P.2d at 690 n. 17 (emphasis added). Garceau asked instead for a modified version of the standard California (CALJIC) instruction on other crimes evidence, which would have instructed the jury that such evidence "may not be considered by you to prove ... bad character or ... disposition to commit crimes." *Id.* at 690 n. 18. His request was rejected by the court.

On direct appeal, Garceau argued that the trial court's instruction violated California Evidence Code § 1101, which reads:

> (a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, *evidence of a person's character or a trait of his or her character* (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) *is inadmissible when offered to prove his or her conduct on a specified occasion.*
>
> (b) *Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other*

meet this standard, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; *or* that the questions are adequate to deserve encouragement to proceed further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir.2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4,

103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (internal quotation marks omitted) (emendation in the original)). Because it is clear that Garceau meets this standard, we grant the COA and exercise jurisdiction over all issues presented in this appeal. *See Whelchel*, 232 F.3d at 1202 n. 1.

*act when relevant to prove some fact* (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) *other than his or her disposition to commit such an act.*

Cal. Evid.Code § 1101(a), (b) (2001) (emphasis added). The California Supreme Court agreed, holding that the instruction "impermissibly invited the jury to consider certain evidence (e.g., that defendant killed Rambo) for the purpose of establishing defendant's propensity to commit murder." *Garceau,* 862 P.2d at 691. The California Supreme Court concluded, however, that the error was harmless because there was "overwhelming evidence" of Garceau's guilt. *Id.* at 691–92.

Garceau argues that, not only was the instruction contrary to California law, but it violated the Due Process Clause by permitting the jury to use the evidence of his other crimes to establish his criminal propensity, *i.e.,* the likelihood that he committed the charged crimes.

The Supreme Court has held that it is not a violation of due process to admit other crimes evidence, for purposes other than to show conduct in conformity therewith, where the jury is given a limiting instruction "that it should not consider the prior conviction as any evidence of the defendant's guilt on the charge on which he was being tried." *Spencer v. Texas,* 385 U.S. 554, 558, 563–64 (1967); *accord Estelle v. McGuire,* 502 U.S. 62, 74–75 (1991). The defendant in *Spencer* was charged with murder and the trial court admitted into evidence the fact that the defendant had previously been convicted of murder. *Spencer,* 385 U.S. at 557, 87 S.Ct. 648. Although the Supreme Court

did not explicitly say that the limiting instruction was necessary to the constitutional admission of the other crimes evidence, it relied on the existence of the limiting instruction in holding that there was no due process violation. *Id.* at 562, 87 S.Ct. 648("This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that . . . the jury is expected to follow instructions in limiting this evidence to its proper function. . . .").

This reliance has led two circuits to hold that the admission of other crimes evidence, for purposes other than to show conduct in conformity therewith, violates due process in the absence of a limiting instruction. *See Panzavecchia v. Wainwright,* 658 F.2d 337, 341 (5th Cir.1981) (holding that it violated due process for the jury to hear "repeated references to the defendant's criminal past without any limiting instruction to relate this evidence only to the firearm violation and to disregard it altogether in considering the murder count"); *Murray v. Superintendent, Ky. State Penitentiary,* 651 F.2d 451, 453 (6th Cir.1981) (noting that the Sixth Circuit has held that "[t]he logical converse of [*Spencer*] is that it is unfair and violative of due process if evidence of other crimes is admitted without a limiting instruction").

Nonetheless, the Supreme Court has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes. Indeed, the Supreme Court has expressly declined to answer these questions, *see Estelle,* 502 U.S. at 75 n. 5, 112 S.Ct. 475 ("Because we need not reach the issue, we express no opinion on whether a state law would

violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").[3]

The Ninth Circuit has addressed the first of the issues left open by the Supreme Court by holding that the admission of other crimes evidence, where there were *no* permissible inferences the jury could have drawn from the evidence (in other words, no inference other than conduct in conformity therewith), violates due process. *See McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir.1993); *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.1991). In *Jammal* and *McKinney*, however, we did not have before us a case, like this one, where there *is* a permissible inference that the jury could draw from the other crimes evidence, but where the jury was expressly invited to draw the *additional* inference of criminal propensity.[4]

The question we must answer, therefore, is whether the express propensity instruction in this case "by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72, 112 S.Ct. 475(internal quotation marks and citations omitted). The analysis underlying *McKinney* supports the conclusion that the jury instruction at issue so offended fundamental conceptions of justice and fair play as to rise to the level of a constitutional violation. Specifically, in *McKinney*, we held that the admission of

other crimes evidence violated due process where: (1) the balance of the prosecution's case against the defendant was "solely circumstantial;" (2) the other crimes evidence, which involved the defendant's past use of knives, was similar to the stabbing for which he was on trial; (3) the prosecutor relied on the other crimes evidence at several points during the trial; and (4) the other crimes evidence was "emotionally charged." *McKinney*, 993 F.2d at 1381–82, 1385–86.

Application of the *McKinney* factors to this case similarly leads to the conclusion that the other crimes jury instruction violated due process. First, the State's case, absent the impermissible propensity inference, was not a strong one. There was no physical evidence connecting Garceau to the alleged murders. The State's case consisted entirely of testimony by Garceau's drug partners that Garceau had told them that he had committed the murders and circumstantial evidence. Garceau argued to the jury, not implausibly, that this testimony was tainted by self-interest. Second, the impermissible propensity inference in this case was very strong. The other crime, Rambo's murder, was precisely the same crime for which Garceau was on trial. In addition, the proximity between Rambo's murder and the murders for which Garceau was on trial was a very close five months. Third, the prosecutor relied fairly heavily on the Rambo murder

---

**3.** In his partial dissent in *Spencer*, Chief Justice Warren argued that "[w]hile this Court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment, our decisions ... suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause." 385 U.S. at 572–74, 87 S.Ct. 648. This comports with the Advisory Committee's analysis of Fed. R. Evid. 404, that the general rule against using

other crimes evidence to make inferences about character or propensity in a criminal case "is so deeply imbedded in our jurisprudence as to assume almost constitutional proportions." Fed.R.Evid. 404(a) advisory committee note (1972).

**4.** In *Jammal*, there was no limiting instruction, but the defendant was "barred from complaining" about its absence because he did not request one. 926 F.2d at 920 n. 2. Garceau asked for a limiting instruction.

in urging the jury to draw the propensity inference.[5] Fourth, the other crime in this case was explained in graphic detail and very likely emotionally affected the jury.

Moreover, *McKinney* based its conclusion regarding the Due Process Clause on the fact that "drawing propensity inferences from 'other acts' evidence of character is impermissible under an historically grounded rule of Anglo-American jurisprudence...." *Id.* at 1384. The court held that when no other inference is possible, such evidence must be excluded. *Id.* The harm of "drawing the propensity inference" is no less stark, however, where it is possible for the jury additionally to draw other inferences. The only way to mitigate this harm, short of excluding the evidence altogether (which *Spencer* and *Estelle* held is not required by due process) is to give the jury a limiting instruction. Even worse than failing to give such an instruction is what the trial court did in this case: affirmatively inviting the jury to draw the propensity inference. Accordingly, we conclude that the other crimes jury instruction rendered Garceau's trial so fundamentally unfair as to constitute a violation of the Due Process Clause.

█ We must next determine whether the due process violation constituted harmless error. The California Supreme Court held the erroneous jury instruction in this case was harmless under the "harmless beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Gar-*

*ceau,* 862 P.2d at 691–92. Although that is the correct standard for direct review, habeas review is more deferential. *See Brecht v.*

█ *Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ("The imbalance of the costs and benefits of applying the *Chapman* harmless-error standard on collateral review counsels in favor of applying a less onerous standard on habeas review of constitutional error."). On habeas review, error is harmless unless it " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). That is, the error is harmless unless Garceau can establish "actual prejudice." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (internal quotation marks and citation omitted).

█ The district court accorded the California Supreme Court's conclusion that the error in this case was harmless beyond a reasonable doubt a "presumption of correctness" because it was a "state court finding[ ]." As Garceau correctly points out, however, "[w]hether the constitutional error was harmless is not a factual determination entitled to the statutory presumption of correctness under 28 U.S.C. § 2254(d)." *Lawson v. Borg,* 60 F.3d 608, 612 (9th Cir.1995). Thus, we consider the harmless error question de novo.

The court in *McKinney* stated that "[t]he analysis that leads us to conclude

5. The prosecutor referred to Rambo's murder on dozens of pages of the transcript of his closing argument. He began his closing argument by saying that he intended to show that "the defendant[was] the killer of not only Maureen Bautista and Telesforo Bautista but Greg Rambo." State Ct. Rep. Tr. at 3658. He tied the murders together at several points in his closing argument, perhaps most extensively by using several pages of transcript to

make a point-by-point comparison of the three murders, arguing that "[t]here are certain systems at least of categories that connect Maureen and Telesforo's murder with Greg Rambo's murder." State Ct. Rep. Tr. at 3861–65. He concluded: "Garceau is the common denominator. Garceau is the one who committed the murders." State Ct. Rep. Tr. at 3865. 17258

that the erroneous admission of propensity evidence rendered [defendant's] trial fundamentally unfair in violation of the Due Process Clause is similar to the analysis we must undertake to determine whether his conviction must be set aside on collateral review." *McKinney*, 993 F.2d at 1385. The court proceeded to conduct the harmless error analysis by evaluating the same factors it had used to determine that a constitutional violation had occurred. *Id.* at 1386. Following *McKinney*, in order to determine whether the jury instruction in this case constituted harmless error, we therefore examine the quality, significance, and pervasiveness of the evidence related to the propensity instruction.

As discussed above, a review of the record leads to the conclusion that the instruction did not constitute harmless error. The evidence against Garceau was not weighty; in fact, there was no direct physical evidence implicating Garceau and the conviction turned on the testimony of potentially biased witnesses. In addition, the other crimes evidence was used pervasively throughout the trial. Indeed, the prosecutor made significant reference to the Rambo murder during closing argument. Moreover, one of the other crimes in question—Rambo's murder—was identical to the crime for which Garceau was on trial, heightening its emotional impact and evidentiary significance.[6] In light of these facts, it was highly probable that the court's instruction to the jury to consider Garceau's other crimes to judge his conduct had a substantial and injurious effect on determining the jury's verdict. *See id.*

▮ The State argues, and the California Supreme Court concluded, that the balance of the State's case against Garceau was "overwhelming." This argument is based largely on the fact that several people testified in detail that Garceau confessed to them that he had committed the murders. It is true that evidence of a confession carries significant weight on harmless error review, at least when the defendant has confessed to the police. *See, e.g., Tucker v. Johnson*, 242 F.3d 617, 629 (5th Cir.) (holding that admission of other crimes evidence was harmless in light of defendant's confession to police and overwhelming evidence of guilt), *cert. denied*, — U.S. —, 122 S.Ct. 18, 150 L.Ed.2d 800 (2001). The confessions introduced in this case, however, were not made to the police, but assertedly to drug partners who arguably had reasons to lie. This weakens considerably the evidentiary weight of the confessions and, as a result, significantly undermines the State's assertion that the weight of the evidence of guilt was overwhelming. When viewed in the context of the entirely circumstantial and self-interested nature of the evidence against Garceau, the fact that the jury was instructed to infer criminal propensity from the other crimes testimony clearly prejudiced Garceau's case. We conclude, therefore, that the admittedly unconstitutional jury instruction was not harmless and that the writ of habeas corpus should issue.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court erred in denying Garceau's habeas petition on the ground that the "other crimes" jury instruction, albeit erroneous, was harmless error. Because Garceau's trial and conviction were infected with constitutional error which

---

6. Nor was the other crimes evidence in this case "cumulative" of properly admitted evidence. *See Brecht v. Abrahamson*, 507 U.S. 619, 639, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see also Laboa v. Calderon*, 224 F.3d 972, 978 (9th Cir.2000) (holding improperly admitted confession was harmless because it "added nothing to the evidence").

had a substantial and harmful effect on the jury's verdict, we reverse the judgment of the district court denying Garceau's petition for a writ of habeas corpus. We remand the case to the district court with directions to issue the writ, unless the State grants Garceau a new trial within a reasonable period of time to be set by the district court.

**REVERSED and REMANDED.**

THOMAS, Circuit Judge, concurring:

I concur in Judge Tashima's opinion. I write separately to note that, if we were not reversing on the grounds stated in the majority opinion, we would necessarily have to reverse and remand with instructions to the district court to hold an evidentiary hearing on Garceau's claim of ineffective assistance of counsel during the sentencing phase. Indeed, the warden conceded as much during oral argument of this case.

We review the district court's decision to deny an evidentiary hearing for an abuse of discretion. *Lawson v. Borg,* 60 F.3d 608, 611 (9th Cir.1995). In this case, the district court erred in denying Garceau's request for an evidentiary hearing concerning his claim of ineffective assistance of counsel at the penalty phase.

"To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Correll v. Stewart,* 137 F.3d 1404, 1411 (9th Cir. 1998). "In addition, ... if the petitioner has failed to develop material facts in state court proceedings, he or she must demonstrate [1] adequate cause for his or her failure and [2] actual prejudice resulting from that failure." *Id.*

Garceau did not develop the facts supporting his ineffective assistance of counsel claims in state court. However, he has shown both cause and prejudice justifying his failure.

A proper request for an evidentiary hearing in state court satisfies the "cause" requirement.

When a state court denies an evidentiary hearing on a colorable ineffective assistance of counsel claim after proper request, a habeas petitioner has fulfilled the *[Keeney v.] Tamayo–Reyes* [504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)] "cause" requirement. Simply put, the state cannot successfully oppose a petitioner's request for a state court evidentiary hearing, then argue in federal habeas proceedings that the petitioner should be faulted for not succeeding.

*Correll,* 137 F.3d at 1413. Therefore, Garceau has satisfied the "cause" requirement by requesting a state evidentiary hearing on these issues. *See id.*

Because the *Tamayo–Reyes* prejudice prong is coextensive with the ineffective assistance of counsel prejudice prong under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Garceau will have satisfied the prejudice prong under *Tamayo-Reyes* if he establishes a colorable ineffective assistance of counsel claim. *See Correll,* 137 F.3d at 1414.

The parties do not dispute that Garceau did not receive a state evidentiary hearing on these issues; therefore, a state court has not "reliably found the relevant facts," *see id.* at 1411, and he will be entitled to an evidentiary hearing if he establishes a colorable claim.

"To establish a colorable claim of ineffective assistance of counsel, [petitioner] must demonstrate [1] that his counsel's

performance at trial was deficient, and [2] that the deficient performance prejudiced his defense." *Id.* (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

In this case, Garceau's counsel performed deficiently in preparing for and conducting Garceau's sentencing hearing. Counsel failed to investigate mitigating evidence relating to drug addiction and post-traumatic stress disorder ("PTSD"). Counsel also failed to investigate and rebut aggravating evidence regarding Garceau's participation in an alleged kidnapping.

"[W]here counsel is on notice that his client may be mentally impaired, counsel's failure to investigate his client's mental condition as a mitigating factor in a penalty phase hearing, without a supporting strategic reason, constitutes deficient performance." *Hendricks v. Calderon,* 70 F.3d 1032, 1043 (9th Cir.1995).

Counsel testified that he knew of Garceau's cocaine use and that he "was aware that cocaine use caused significant alternations in mental functioning and behavior, including that cocaine was widely recognized to cause psychosis as a result of chronic use." Nonetheless, he did not investigate the extent of Garceau's use, nor did he question the witnesses about Garceau's use or behavioral changes although even the prosecution's witnesses described Garceau's paranoid and delusional behavior. Furthermore, he hired an expert who could not document or diagnose the impact of chronic cocaine dependence and was not a psychopharmacologist. No strategic reason supported counsel's failure to investigate Garceau's drug addiction. *See id.*

Similarly, counsel failed to investigate or present evidence of PTSD. Although counsel stated that he was not aware that Garceau suffered from PTSD, he did know that Garceau served in Vietnam and abused heavy amounts of cocaine. Dr. Craig W. Haney, a psychology professor

and an attorney, declared that at the time of the arrest and trial "it was common knowledge among virtually all mental health professionals and most capital attorneys with whom [he] was familiar that such experiences [as combat service in Vietnam] could produce longlasting psychological problems of the sort [Garceau] was experiencing and, also, that many persons suffering from these psychological problems used alcohol and illicit drugs in an effort to 'self-medicate' and blunt the pain and mask the emotional and behavioral consequences of the post-traumatic stress they were experiencing." Given the combat service, the drug use, the violence of the attacks, and the statements by his drug partners about paranoia and delusional behavior, counsel should have known to investigate PTSD as a possible mitigating factor. The failure to do so falls "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

The decision to not present mitigating evidence at a capital sentencing hearing "should be the product of a reasoned choice. Counsel has 'a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Correll,* 137 F.3d at 1412 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052). In this case, counsel did not make a reasoned choice; he simply failed to investigate potentially mitigating evidence. *See id.*

Additionally, counsel performed "outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052, in utterly failing to investigate and rebut the aggravating evidence of Garceau's involvement in an alleged kidnapping. The prosecution presented considerable evidence during the sentencing hearing about this event. Garceau was initially charged as the driver in a kidnap-

ping; however, the charges were dropped after the defense attorney produced a witness who claimed that the alleged victim got into the truck voluntarily. Counsel in this case did not contact the prior attorney, did not interview any of the prosecution's witnesses, and did not attempt to find other percipient witnesses. In fact, one of the witnesses, the co-defendant in the kidnapping, even contacted counsel, but counsel refused to speak with him and just told him to arrive when he had been subpoenaed. During the sentencing hearing, counsel did not even bother to present evidence that the charges had been dismissed. Counsel's utter failure to investigate this aggravating evidence constitutes constitutionally deficient performance. *See Correll*, 137 F.3d at 1412–13.

Counsel's deficient performance also prejudiced Garceau. "To establish the prejudice prong of the *Strickland* standard, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Hendricks*, 70 F.3d at 1036 (alteration in original) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Failing to reasonably investigate potentially mitigating circumstances without a reasonable tactical explanation constitutes prejudice. *Correll*, 137 F.3d at 1413 ("[A]bsent any reasonable investigation into potentially mitigating circumstances and any reasonable tactical explanation, we must conclude [petitioner] has made a colorable claim of ineffective assistance of counsel at his capital sentencing.").

Counsel put on no expert testimony at all during the penalty phase.[1] The jury

learned of Garceau's drug use through the prosecution witnesses, but counsel failed to put Garceau's drug use, social history, and Vietnam experience before the jury in a way that could explain his addiction and his behavior. In failing to do so, his performance prejudiced Garceau. *See Caro v. Calderon*, 165 F.3d 1223, 1227–28 (9th Cir. 1999); *see also Wallace v. Stewart*, 184 F.3d 1112, 1116 (9th Cir.1999) ("Does an attorney have a professional responsibility to investigate and bring to the attention of mental health experts who are examining his client, facts that the experts do not request? The answer, at least at the sentencing phase of a capital case, is yes."), *cert. denied*, 528 U.S. 1105, 120 S.Ct. 844, 145 L.Ed.2d 713 (2000).

Furthermore, the prosecution focused intently on the alleged kidnapping during the sentencing hearing. In closing, the prosecutor argued a trend of escalating violence that culminated in the three murders: "consider ... whether this defendant is a man who has committed isolated acts of criminal conduct or whether this offender has rather developed a pattern of criminal conduct that began with the burglary and ultimately exploded into what I'm about to tell you is three murders." State Ct. Rep. Tr. of Sentencing Hr'g at 172. The kidnapping was an essential "first outward manifestation of violence toward another person" in this argument. State Ct. Rep. Tr. of Sentencing Hr'g at 173. Because of the kidnapping's pivotal role in the prosecution's argument, counsel's utter failure to investigate and rebut the prosecution's characterization of the incident as a crime of violence, at least by mentioning that the charges had been dismissed because a witness claimed that the alleged victim voluntarily accompanied the

---

1. In fact, counsel relied exclusively on the testimony of two family members and the cross-examination of the prosecution's witnesses—most of whom testified about the alleged kidnapping.

defendants, is "sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

Garceau has established a colorable claim of ineffective assistance of counsel during his sentencing hearing. He has also demonstrated cause and prejudice, *see Tamayo–Reyes,* 504 U.S. at 6, 112 S.Ct. 1715, for his failure to develop related facts in state court. Therefore, the district court erred in denying his request for an evidentiary hearing on these issues. *See Correll,* 137 F.3d at 1412.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I agree with Judge Thomas that we must "reverse and remand with instructions to the district court to hold an evidentiary hearing on Garceau's claim of ineffective assistance of counsel during the sentencing phase"; indeed, even "the warden conceded as much during oral argument of this case." *Supra,* Concurrence at 778 (Thomas, J., concurring). But the majority goes further, reversing and remanding with instructions to grant Garceau a

writ of habeas corpus (unless California grants him a new trial) based on the "other crimes" jury instruction. Because I believe that even if the instruction might have violated Garceau's due process rights any error was harmless under the deferential standard of *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), I respectfully dissent.

I

The majority forthrightly admits that "the Supreme Court has never expressly held that ... it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Supra,* Maj. Op. at 775. Nonetheless, the majority extends this court's precedents to hold that the "other crimes" instruction given in this case, which explicitly allowed the jury to use evidence of Garceau's other crimes as propensity evidence, "so offended fundamental conceptions of justice and fair play as to rise to the level of a constitutional violation," *id.* at 775.[1]

---

1. Of course, it is not clear that the majority could have reached this conclusion had it been forced to grapple with *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). The Supreme Court has explained that in the usual federal habeas case, "[t]he application of *Teague* is a threshold question...." *Goeke v. Branch,* 514 U.S. 115, 117, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995) (per curiam). *Teague,* of course, bars a federal court considering a pre-AEDPA habeas petition from granting the petition where the vindicating a petitioner's claim would create a "new rule." *Id.* at 310, 109 S.Ct. 1060. Certainly, given that neither the Supreme Court nor this court has yet addressed the question that today's opinion answers, the state has at the very least a colorable argument that the majority today announces a "new rule," on which it cannot grant Garceau relief. *See O'Dell v. Netherland,* 521 U.S. 151, 164, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) (stating that a new rule is

one that "a reasonable jurist ... would not have felt *compelled* to adopt") (emphasis added).

> Alas, the state did not raise *Teague* in its briefs before this court. And I recognize that we have discretion to consider *Teague* waived if it is not raised in the briefing. *See, e.g., United States v. Navarro,* 160 F.3d 1254, 1256 (9th Cir.1998) ("*Teague* can be waived ....") (citing *Goeke,* 514 U.S. at 116–18, 115 S.Ct. 1275). But given the majority's candid admission that the new rule it announces today is not compelled by any of our precedents, I would hesitate to forego a *Teague* analysis if the state had only implicitly waived *Teague* by failing to raise it in his briefs. *See, e.g., Jackson v. Johnson,* 217 F.3d 360, 361 (5th Cir.2000) ("[A]bsent compelling reasons to the contrary, a federal court should apply *Teague* even when it has been implicitly waived by the State.").

The majority may be right on this point. Certainly, "[t]he Constitution does not encompass all traditional legal rules and customs, no matter how longstanding and widespread such practices may be." *United States v. LeMay,* 260 F.3d 1018, 1024 (9th Cir.2001). And indeed, the Supreme Court has warned against the wholesale importation of common law and evidentiary rules into the Due Process Clause of the Constitution. Thus, in *Dowling v. United States,* the Court explained that a rule or practice must be a matter of "fundamental fairness" before it may be said to be of constitutional magnitude. 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *see also id.* ("[B]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."). But as we have pointed out before, the Supreme Court has further explained that "the primary guide for determining whether a rule is so 'fundamental' as to be embodied in the Constitution is historical practice." *LeMay,* 260 F.3d at 1025(citing *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion)). And as we have recognized, "it seems clear that the general ban on propensity evidence has the requisite historical pedigree to qualify for constitutional status." *Id.* (citing *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); and *McKinney v. Rees,* 993 F.2d 1378 (9th Cir. 1993)); *see also, e.g., Harrison's Trial,* 12 How. St. Tr. 834, 864 (Old Bailey 1692) (Holt, C.J.) (excluding propensity evidence in a murder trial, remarking, "Hold, what are you doing now? Are you going to arraign his whole life? Away, away, that ought not to be; that is nothing to the matter"); *Hampden's Trial,* 9 Cob. St. Tr. 1053, 1103 (K.B.1684) (Withins, J.) (excluding evidence of prior forgeries from the trial of a man accused of forgery, explaining that the evidence would "rak[e] into men's course of life, to pick up evidence that they cannot be prepared to answer to"). *See generally* Louis M. Natali, Jr. & R. Stephen Stigall, *"Are You Going to Arraign His Whole Life?": How Sexual Propensity Evidence Violates the Due Process Clause,* 28 LOYOLA U. CHI. L.J. 1, 12–23 (1996).

Accordingly, it may be true that the jury instruction in this case, which explicitly invited the jury to consider past crimes committed by Garceau as evidence of his guilt in this case, violated Garceau's due process rights. Presuming, as we must, that the jury in this case followed its instructions, *see, e.g., Weeks v. Angelone,* 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), we must conclude that the jury considered Garceau's prior crimes as evidence that he committed the crime for which he was being tried. Because such consideration puts a thumb on the prosecution's side of the scales of justice and may well allow conviction on evidence that does not demonstrate guilt *for this crime* beyond a reasonable doubt, it seems fair to reason, as the majority does, that it violates the Due Process Clause. *Cf. People v. Garceau,* 6 Cal.4th 140, 24 Cal.Rptr.2d

---

The state, though, went one step further. Asked at oral argument whether *Teague* applied to this case, counsel for the state lamely replied, *"Teague* has never been raised in this case." When pressed from the bench, and given an opportunity to raise *Teague,* counsel impotently responded, "I don't know why *Teague* has never been raised in this case," but did not, in fact, raise it. Because the state thus explicitly declined to invoke *Teague,* even when squarely presented with the opportunity to do so, I reluctantly conclude that it is inappropriate to analyze whether the *Teague* bar applies. I note with dismay, however, that the state has no one to blame but its own lawyer for the fact that the majority can apply its newly-minted rule in this case.

664, 862 P.2d 664, 691 (1993) (in bank) (noting that when "other crimes" evidence is considered to show propensity, it "invites the jury to be swayed by speculation that, because the defendant previously has murdered, he or she also committed the charged murder").

## II

Even assuming that Garceau suffered a violation of his constitutional rights, though, I simply cannot conclude that Garceau is entitled to federal habeas relief. For even if the "prior crimes" instruction violated Garceau's due process rights, on habeas review we may grant relief only if the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710. That is, Garceau is entitled to habeas relief only if he can show that any constitutional violation "resulted in 'actual prejudice.'" *Id.*

I begin by noting that, for purposes of this analysis, the introduction of evidence of Garceau's prior crimes was not itself problematic. As the majority correctly points out, there was a permissible, non-propensity inference that the jury could have drawn from this evidence. *See supra,* Maj. Op. at 775 (admitting that in this case, "there *is* a permissible inference that the jury could draw from the other crimes evidence"). Indeed, as the California Supreme Court explained, the other-crimes evidence

> was *not* introduced over the objection of the defense, but rather *at its invitation.* The defense sought to include such evidence in an effort to persuade the jury of the likelihood that some other member of the drug conspiracy killed Greg Rambo and the Bautistas.

*Garceau,* 24 Cal.Rptr.2d 664, 862 P.2d at 691. Thus, the only question to be answered is whether the giving of the "other crimes" instruction itself, which specifically invited the jury to draw the propensity inference, resulted in "actual prejudice" to Garceau under the highly deferential standard of *Brecht* . In my view, the answer to that question is emphatically "no."

The majority analyzes the factors outlined in *McKinney v. Rees,* 993 F.2d 1378, 1384 (9th Cir.1993) and concludes that any constitutional error committed by the trial court when it gave the "other crimes" instruction was not harmless under *Brecht.* This analysis, though, ignores one unassailable truth about the facts of this case: the jury heard evidence that Garceau had killed Rambo *only* from the same drug partners who testified that he killed the Bautistas. The state did not introduce evidence of Garceau's conviction for Rambo's murder. As a result, the State's entire case rested on the credibility of Garceau's drug partners. *Cf. Garceau,* 24 Cal. Rptr.2d 664, 862 P.2d at 691 (explaining that "it was clear the defense desired that the jury consider th[e] ['other crimes'] evidence for the purpose of establishing defendant's innocence of the charged offenses"). That the jury convicted Garceau therefore strongly suggests that the jury found the State's witnesses credible, and thus, only factors that eroded the credibility of the drug partners would have changed the outcome. I cannot believe that the jury would have believed Garceau's drug partners when they said that Garceau committed the other crimes, but then doubted them when they said that he committed the Bautista murders, only to have that doubt mollified by the propensity instruction. The jury either believed the testimony of the drug partners, or it did not. Because this credibility determination would not have been undermined by removing the propensity inference from the jury's deliberations, I simply cannot comprehend how a proper jury instruction

would have changed the outcome. *Cf. Franklin v. Henry,* 122 F.3d 1270, 1273(9th Cir.1997) (holding error not harmless where it undermined the credibility of key witnesses).

While the majority may be correct in asserting that the evidence of Garceau's guilt was not, as the state contends, "overwhelming," that is not to say that the propensity inference was the key to the State's case on the question of Garceau's guilt. Indeed, as I have already explained, the key to the state's case was the credibility of Garceau's drug partners—and the inference in no way affected that credibility. Accordingly, I am not persuaded that the instruction was harmful under *Brecht. Cf. Penry v. Johnson,* 532 U.S. 782, 121 S.Ct. 1910, 1920, 150 L.Ed.2d 9 (2001) (concluding that any error in admitting evidence did not have a "substantial and injurious effect" on the verdict under *Brecht* where the evidence admitted "was by no means the key to the State's case").

### III

No one seriously disputes that the jury instruction given in this case violated California evidentiary law. But that alone is not enough to merit federal habeas relief. As we have explained before,

> We are not a state supreme court of errors; we do not review questions of state evidence law. On federal habeas we may only consider whether the petitioner's conviction violated *constitutional* norms....

> [F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief. While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated....

*Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991) (emphasis added). In this case, the propensity instruction may well have violated Garceau's due process rights. But even that is not enough. As a federal habeas petitioner, Garceau must also show *actual prejudice.* This he has not done; thus, he is not entitled to habeas relief from this court. Because the majority today grants a new trial (or, alternatively, freedom) to a man who (i) was duly convicted under California law of brutally killing two innocent women, and (ii) is not being held in violation of the Constitution of the United States, I dissent.