Filed 7/25/14  P. v. Graves CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. LARRY A. GRAVES, Defendant and Appellant. | B250022 (Los Angeles County  Super. Ct. No. TA125793) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed as modified.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant Larry A. Graves of two counts of forcible rape (§ 261, subd. (a)(2))[1] and one count of failure to register as a sex offender (§ 290, subd. (b)). In regard to the two forcible rape convictions, the jury found that defendant personally used a deadly weapon (a knife) (§§ 667.61, subds. (a) & (e), 12022, subd. (b)(1)) and that he committed the crime against more than one victim (§ 667.61, subds. (a) & (e)). The trial court sentenced defendant to a term of 53 years to life.

In this appeal, defendant contends that his rape convictions must be reversed because the trial court committed a prejudicial abuse of discretion when, over his objection, it permitted the prosecution to introduce evidence of a prior forcible sexual assault he had committed. (Evid. Code, §§ 1101, subd. (b) & 1108.) We are not persuaded. However, the Attorney General correctly urges that the abstract of judgment does not reflect the sentence imposed. We therefore direct preparation of an amended abstract of judgment but, in all other respects, affirm the judgment.

# FACTUAL BACKGROUND

1. *The Forcible Rape of P. W.*

P.W. is a prostitute. On April 21, 2012, she was standing on a street speaking "to some people" in an area frequented by prostitutes. Defendant, driving his car, approached P.W. and asked her for a "date." A "date" means sex. She entered his car and agreed to orally copulate him for $50. Defendant drove the car a short distance and stopped. He gave P.W. $50 which she put in her bra. After

---

[1]     Unless stated otherwise, all undesignated statutory references are to the Penal Code.

2

she began to orally copulate him, he asked the price for sexual intercourse. P.W. replied that it would be an additional $60.

At first, defendant responded "Okay" but then he grabbed her by the back of her hair, pulled her head back, held a knife to her neck, and said: "[Y]ou will give me my money back." "[Y]ou will give me sex for free." Terrified, P.W., who at that point was "half naked," said she would give defendant his money and asked him not to hurt her. Defendant pushed her panties aside and raped her.

Afterwards, defendant, still holding the knife to P.W.'s neck, again demanded return of his money. She complied but then defendant reached into her bra and removed more money. After a brief conversation in which defendant offered to be her pimp, he drove back to the area where they had first met and let her out of his car. P.W. recorded the license plate number on defendant's car.

Four days later, P.W. went to a medical clinic and reported the rape.[2] Upon the doctor's advice, she reported the incident to the police later that day. She gave the police the panties she had worn when defendant had raped her. Sperm on the garment contained defendant's DNA profile.

2. *The Forcible Rape of G.S.*

During the morning of July 21, 2012, G.S. was working as a prostitute. She saw defendant parked in a car. She approached and asked him if he wanted a "date." He replied "yes." G.S. entered his car and defendant handed her $30 for fellatio.

Defendant drove his car a short distance and parked. G.S. bent down to orally copulate him. Defendant suddenly pulled out a knife, placed himself on top

---

[2] The doctor's testimony about P. W.'s statements regarding the rape was admitted pursuant to the fresh complaint doctrine. The trial court instructed the jury about the limited use to which it could put the testimony.

of G.S., put the knife to her throat, took money from her bra, and raped her. After the rape, defendant drove G.S. back to the area they had met and let her leave.

Later that morning, G.S. reported the rape to the police. She was taken to a hospital and given a sexual assault examination. Susan Barie, a registered nurse, testified that G.S. "was crying off and on" during the exam and told her that she had been "penetrated in the vagina by a penis" by a man who had placed "a knife up to her neck." Sperm found in G.S.'s vagina contained a DNA profile consistent with that of defendant.

3. *Defendant's Interview with the Police About the Rapes*

On December 14, 2012, Detective Lorena Tarjamo conducted a videotape interview of defendant. The videotape was played for the jury and entered into evidence.

After defendant was advised of and waived his *Miranda* rights, Detective Tarjamo showed him photographs of P.W. and G.S. Defendant denied having met either woman. When presented with the DNA evidence linking him to the rapes, defendant put his head in his hands for over a minute and then stated: "I met both these ladies. We exchanged money for [a] sexual favor. Basically being a blowjob. After that, in one incident it was –actually in both I can say—at the end of the transaction, it was 'I want more money or else.' [¶] . . . I just told them to get out. . . . 'I'm not giving any more money than what we negotiated.'" Defendant denied having had sexual intercourse (consensual or non-consensual) with either woman.

When Detective Tarjamo told defendant "Your sperm was found on [G.S.'s] vagina[,]" defendant responded: "I didn't put it there." Defendant denied owning a knife or threatening either woman with a knife. At first, defendant stated that he had "paid for [the women's] services. I didn't take anything." Later, he conceded

4

that he had taken back his money from each woman but claimed he did so because he was not satisfied with her services.

4. *Evidence of a Prior Forcible Sexual Assault Committed by Defendant*

At trial, J.S. testified as follows.[3] On March 22, 1991, she was walking through a park-and-ride lot when defendant suddenly grabbed her in a choke hold. Defendant held a butcher knife to the side of her face. Defendant hit her in the nose and jaw and said: "Bitch I'm serious. I mean business." He pushed her down between two parked cars and continued to hit her in the face. He cut the front of her bra with the knife and told her: "You are going to perform a public service on me." He removed her panties, bit her breasts, and placed his hand in her vagina. A passerby yelled: "Get off her." Defendant took J.S.'s watch and fled. Several men, including Daniel Marshall who testified at trial, witnessed the assault and chased defendant down and held him until the police arrived. J.S. suffered serious injuries as a result of the attack.

5. *Defendant's Failure to Register As a Sex Offender*

The parties stipulated to the following background facts. In September 1991, the juvenile court sustained a petition alleging that on March 22, 1991, defendant had committed sexual penetration by a foreign object (§ 289). The juvenile court committed defendant to the California Youth Authority (CYA). Following his May 2000 discharge from the CYA, defendant was legally obligated to register as a sex offender.

---

[3] When we discuss defendant's contention that the trial court abused its discretion in permitting this testimony, we will set forth the facts of the pretrial litigation about this evidence.

Evidence presented at trial established the following. Defendant last registered as a sex offender in May 2012, giving his address as 11231 South Compton Avenue in Compton, California. In December 2012, Officer Yevette Perez, assigned to the registration enforcement unit, interviewed defendant. Defendant told her that he understood that, pursuant to section 290, he was required to register as a sex offender. Following advisement and waiver of his *Miranda* rights, defendant admitted that he did not live at the Compton address. In addition, defendant's cousin, who did reside at that address, testified that defendant had never lived there.

6. *The Defense Case*

Defendant did not present any evidence. In closing argument, defense counsel argued that the two victims were not credible, primarily because of inconsistencies between their trial testimony and their earlier statements to the police and secondarily because each admitted she had suffered at least one criminal conviction. Defense counsel also forcefully argued that the jury should not convict defendant based solely upon the evidence of defendant's assault on J.S.[4]

## DISCUSSION

Defendant contends that his "convictions must be reversed as the evidence admitted against him involving [J.S.], and disposition evidence in general, was

---

[4] For instance, defense counsel argued that the evidence about J.S. should not "overwhelm [the jury's] ability to be fair and impartial jurors in deciding [this] case." He urged: "Please examine the facts in this case. Don't just close your eyes to what you heard from the two victims and sweep everything under the rug because of what happened in 1991. . . . I only ask that you please get past that even if it is shocking, and examine the evidence in the current case."

unduly prejudicial and insufficiently probative under sections 1108 and 352, and should not have been admitted." We are not persuaded.

1. *Factual Background*

Prior to trial, defendant filed a motion to exclude any evidence of his 1991 sexual assault on J.S. In response, the People moved, pursuant to Evidence Code sections 1101, subdivision (b) and 1108, to introduce the evidence at trial.[5] The People's written motion included the following offer of proof about the facts of the assault: In March 1991, J.S. was walking through a parking lot when defendant grabbed her, put a knife to her throat and dragged her between parked cars. Defendant hit her in the face numerous times, cut her bra open with his knife, pulled down her panties and inserted his fingers into her vagina. Several individuals saw the assault whereupon defendant unsuccessfully tried to flee after taking J.S.'s watch. The juvenile court sustained a Welfare and Institutions Code section 602 petition based upon defendant's violation of Penal Code section 289. As a result, defendant was confined at the CYA.

At a hearing on the motions, the trial court found the evidence was admissible under both sections of the Evidence Code. In regard to its discretionary power to exclude evidence (§ 352), the trial court explained: "The court is certainly aware of the potential prejudice in cases involving prior crimes. However, in this case, I don't think, especially if the court takes [the] additional action of not allowing the photograph[s of J.S.] to be [admitted] in connection with that prior crime, as to inflame any type of passion with regard to seeing the victim

---

[5] All undesignated statutory references in the "Discussion" portion of our opinion are to the Evidence Code.

[J.S.] in the state that [defendant] left her.[6] The court can kind of cure some prejudice with regard to that. I don't think [the evidence of defendant's assault of J.S.] is so unduly prejudicial that . . . it should not be admitted. I find under [section] 352 it is not unduly prejudicial."

As for defendant's argument that the offense was too remote because it was committed in 1991 when he was 15 years old, the trial court stated: "[I]t is my understanding [defendant] did go ahead and spend a significant amount of time in custody [in the CYA]. All be it, there was a gap in time. I don't find it too remote to be relevant in this case."

After J.S. and Marshall testified at trial about the assault, defendant moved to strike their testimony or, in the alternative, to declare a mistrial. Defense counsel explained: "[A]fter seeing the witness [J.S.] testify, after seeing a Good Samaritan [Marshall] testify, the testimony was so overwhelming horrific that it seems to me . . . that this is clearly a classic case where the prejudicial effect of the testimony far outweighs the probative value."

The trial court denied the motion. It explained:

> "With regards to the court's evaluation, initially I was well aware of what the proposed testimony would be, and [the prosecutor] put it out in his trial brief. It was argued here in court. . . . [¶] . . .

> "I did a [section] 352 analysis with regard to the prior sexual assault case. I admitted it under [section] 1101, but clearly under [section] 1108, it is admissible. I don't find it was unduly prejudicial in light of the fact that we have two alleged victims in this case that allege the defendant pulled a knife on them, threatened by putting it up to their neck, forcibly inserted his penis in their vagina. That is equally as important as the crime that happened in 1991. While the victims might have had somewhat different demeanors, resulting

---

[6] During trial, the court granted the defense motion to exclude the photographs of J.S.

8

injury might have been different. But the female [J.S.] that testified as to the 1991 [assault], but certainly the trauma and mental injury is similar. And in all three incidents, a knife was used. And in all three incidents, a knife was put up to the neck.

"The court took into consideration all of those factors. And even one of our victims broke down on the stand. We had to take a break. Any time you have any type of sexual assault accusations, it's emotional for everybody. But the court has to do a balancing, as it is unduly prejudicial. I still stick to my original analysis in this particular case and these particular facts. It was not unduly prejudicial to the extent it had to be excluded pursuant to [section] 352."

At the close of trial, the court submitted CALCRIM No. 1191, the pattern limiting instruction about consideration of evidence of a prior sexual offense.

2. *Analysis*

Section 1108, subdivision (a), enacted in 1995, provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." "[S]ection 1108 authorizes the admission of evidence of a prior sexual offense to establish the defendant's propensity to commit a sexual offense, subject to exclusion under Evidence Code section 352." (*People v. Lewis* (2009) 46 Cal.4th 1255, 1286.)

Defendant, relying upon *Garceau v. Woodford* (9th Cir. 2001) 275 F.3d 769, contends that section 1108 is unconstitutional because the admission of propensity evidence denies him a fair trial and violates his rights to due process and equal protection of the law. The contention lacks merit. The California Supreme Court has consistently upheld the statute's constitutionality. (*People v. Loy* (2011) 52 Cal.4th 46; *People v. Falsetta* (1999) 21 Cal.4th 903.) We are

9

bound by those holdings. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450.) Consequently, there is no reason for us to address defendant's constitutional arguments.

We turn therefore to defendant's contention that the trial court abused its discretion in allowing the evidence. "Evidence of previous criminal history inevitably has some prejudicial effect. But under section 1108, this circumstance alone is no reason to exclude it. '[S]ection 1108 affects the practical operation of [Evidence Code] section 352 balancing "'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence, evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice" . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of its admission*.'" [Citation.]' [Citation.]" (*People v. Loy, supra,* 52 Cal.4th at p. 62.)

In exercising its discretion, the trial court "must consider such factors as [the] nature, relevance, and possible remoteness [of the prior sexual offense], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of [the option of] excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta, supra,* 21 Cal.4th at p. 917.)

10

The trial court's decision to admit evidence under section 1108 "is reviewed under the deferential abuse of discretion standard and will be reversed 'only if the court's ruling was "arbitrary, whimsical, or capricious as a matter of law. [Citation.]" [Citation.]'" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 991.)

In this case, we find no abuse of discretion. Defendant's assault of J.S. was very similar to the two charged offenses. In each of the three cases, he held a knife to the victim's neck, stole property from the victim (cash or a watch) and vaginally penetrated the victim (with his fingers or penis). Thus, the prior offense had substantial probative value in that it corroborated P.W. and G.S.'s accounts of their assaults, such corroboration being the very reason the Legislature enacted section 1108. (*People v. Falsetta, supra,* 21 Cal.4th at p. 915.)

That the prior offense occurred 21 years before the charged offenses does not change our conclusion. "'No specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' [Citation.] '"Substantial similarities between the prior and the charged offense[] balance out the remoteness of the prior offense[]. [Citation.]" [Citation.]'" (*People v. Robertson, supra,* 208 Cal.App.4th at p. 992.) In fact, "[n]umerous cases have upheld admission pursuant to Evidence Code section 1108 of prior sexual crimes that occurred decades before the current offenses." (*Ibid.* and cases cited therein.)

Further, because the parties stipulated that the juvenile court had sustained a petition against defendant as a result of his assault upon J.S. and that as a result defendant had been confined for eight years in the CYA, the jury would not have been tempted to convict him of the charged crimes to punish him for the earlier assault. (*People v. Loy, supra,* 52 Cal.4th at p. 61.) In addition, because the stipulation established that defendant had committed the offense, "defendant bore no new burden of defending against the charges . . . [and] there was little danger of

11

. . . requiring an inefficient minitrial to determine defendant's guilt of the previous crime[]." (*Ibid.*)

Lastly, the trial court took affirmative steps to cure any potential prejudice. It barred the prosecution from presenting photographs of J.S.'s injuries that could have inflamed the passion of the jury. (See fn. 6, *ante.*) And at the close of trial, it submitted the pattern limiting instruction (CALCRIM No. 1191) about the use to which the jury could put the evidence.

Defendant's contrary arguments are not persuasive. First he claims that the prejudice from the evidence about J.S. "was enormous" because she "was the random victim of an extraordinarily violent assault" whereas "the incidents involving [P.W.] and [G.S.] are, though not excusable, not uncommon to prostitution. . . . Simply put, the attack on Jonell [S.] was pure brutality; the attacks on [P.W.] and [G.S.] were merely mercenary." This is a distinction without a difference. In each incident, defendant, using a knife, violently sexually assaulted a woman he did not know. Defendant's argument that the evidence of assault upon J.S. carried "considerable and inevitable prejudice" is unsupported speculation.

In a similar vein, defendant's reliance upon *People v. Harris* (1998) 60 Cal.App.4th 727 to support his argument that the evidence of the prior offense was inflammatory and prejudicial is misplaced.

In *People v. Harris, supra,* the reviewing court concluded that the trial court had abused its discretion in admitting evidence pursuant to section 1108. "But *Harris'*s facts were entirely different from those here. There, the prior offense was forcible and the evidence of it was 'inflammatory *in the extreme*.' [Citation.] The charged sexual offenses were, by contrast, not forcible but involved breaches of trust. Thus the charged offenses were 'of a significantly different nature and quality than the violent and perverse attack on a stranger that was described to the

12

jury.' [Citation.] Moreover, '[t]he facts of the prior conduct were redacted to a point that the jury must have come away with a misleading impression of what happened . . . .' [Citation.]" (*People v. Loy, supra,* 52 Cal.4th at p. 64.)

Here, in contrast, the prior and charged offenses all involved violent sexual assaults against strangers. And because J.S. and Marshall testified about the prior offense, there was no improper redaction and thus no chance that the jury was given a misleading impression about its commission.

Lastly, defendant argues that "the present case was less compelling than the prior charge [involving J.S.]." He claims "the stronger case made the weaker, which was the case at hand." The argument is misplaced. As explained below, "[w]e disagree that the prosecution case was weak. The overall evidence of guilt was reasonably strong. But even if defendant were correct, the argument would not aid him. [Any] supposed weakness [in the present case] provides no reason to exclude this particularly probative evidence." (*People v. Loy, supra,* 52 Cal.4th at p. 64.)

In sum, the trial court did not abuse its discretion in admitting the evidence of the prior offense pursuant to section 1108.[7]

In any event, even if the trial court's evidentiary ruling was error—a finding we do not make—no prejudicial error occurred. The test for prejudice is that found in *People v. Watson* (1956) 46 Cal.2d 818, 836: is it reasonably probable that defendant would have obtained a more favorable result (acquittal of the two

---

[7] Because we conclude that the trial court did not abuse its discretion in admitting the evidence pursuant to section 1108, there is no reason to consider whether the evidence was also admissible under section 1101, subdivision (b). (*People v. Callahan* (1999) 74 Cal.App.4th 356, 372.)

forcible rape charges)[8] absent the prior offense evidence?  (*People v. Harris, supra,* 60 Cal.App.4th at p. 741.)

Here, each victim unequivocally testified that defendant raped her.  DNA evidence confirmed the commission of the sexual assaults.  Further, when interviewed by the police, defendant first falsely denied that he had ever met either woman but, after being confronted with the DNA evidence, put his head in his hands for over a minute and then gave varying explanations of the events.  These actions constituted consciousness of guilt that further corroborated defendant's culpability.[9]

In addition, the jury is presumed to have followed the limiting instruction (CALCRIM No. 1191) that directed it not to make an improper use of the evidence about the prior offense.  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1115.)  And the prosecutor made only brief references to the prior offense in his arguments to the jury whereas defense counsel argued at length that the jury should not let that evidence cloud its judgment.

In sum, we find that no prejudicial error occurred from the admission of the prior offense involving J.S.

## THE ABSTRACT OF JUDGMENT

At the sentencing hearing, the trial court imposed three consecutive sentences:  a 3-year sentence for the failure to register conviction and a sentence of 25 years to life for each rape conviction.

---

[8]    Defendant does not contend that his conviction for failure to register as a sex offender should be reversed because the trial court admitted the evidence about his assault of J.S.

[9]    The trial court submitted CALCRIM No. 362 ("Consciousness of Guilt:  False Statements").  The prosecutor made this point in his closing argument.

The Attorney General correctly notes that the abstract of judgment fails to indicate that consecutive sentences were imposed for the rape convictions and that defendant was sentenced pursuant to section 667.61. We direct preparation of an amended abstract of judgment to correct these two errors.

## DISPOSITION

The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment that reflects: (1) the sentences on the two rape convictions are to run consecutively; and (2) the sentences were imposed pursuant to section 667.61. As so modified, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

15